**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **SANFORD LAVOY JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 4:09-CV-2244-VEH** |
| ) | |
| **PILGRIM'S PRIDE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

### **I.    Introduction**

Plaintiff Sanford Lavoy Jones ("Mr. Jones") initiated this Americans with Disabilities Act ("ADA") lawsuit against Defendant Pilgrim's Pride, Inc. ("Pilgrim's Pride") on November 4, 2009. (Doc. 1). The court stayed the action on November 23, 2009, due to the suggestion of bankruptcy filed by Pilgrim's Pride on November 10, 2009. (Docs. 5, 3).

On January 12, 2010, the court lifted the stay as a result of Pilgrim's Pride's emergence from bankruptcy. (Docs. 9, 7). On February 2, 2010, Pilgrim's Pride filed a Request for Judicial Notice (Doc. 15) (the "Request"), as well as a Motion to Dismiss Plaintiff's Complaint (Doc. 16) (the "Rule 12(b) Motion"). Both the Request and the Rule 12(b) Motion related to the ongoing viability of Mr. Jones's ADA claims

in light of Pilgrim's Pride's bankruptcy proceedings.

After conducting a hearing on April 19, 2010, the court entered the following margin order:

> In light of Defendant's oral withdrawal of such motion at the hearing held today, <u>the court finds as moot 16 Defendant's Motion to Dismiss. The Defendant's 15 Request for Judicial Notice is granted as unopposed and as otherwise due to be granted</u>. Further, Defendant shall have until April 30, 2010, to file an answer or to otherwise respond (as, for example, by filing a motion for summary judgment) to Plaintiff's <u>4</u> Amended Complaint. If Defendant files a motion for summary judgment, such motion (and any response thereto) shall be in accordance with, and subject to the deadlines set out in, Appendix II to <u>10</u> the Court's Uniform Initial Order. Signed by Judge Virginia Emerson Hopkins on 4/19/2010. (Hopkins, Virginia) (Entered: 04/19/2010)

*See* margin entry dated April 19, 2010 (emphasis added). Therefore, the court granted the Request relating to judicial notice, denied the 12(b)(6) Motion as moot, and anticipated the possibility that, following the April 19 ruling, Pilgrim's Pride might file a motion for summary judgment.

Subsequently, on May 12, 2010, Pilgrim's Pride filed a second Request for Judicial Notice (Doc. 29) (the "Second Request"). On May 13, 2010, Pilgrim's Pride filed a Motion for Summary Judgment (Doc. 30) (the "Rule 56 Motion").[1]

---

[1] By unopposed motion (doc. 27) filed on April 22, 2010, Pilgrim's Pride sought an extension of time, specifically, until May 14, 2010, to file a Motion for Summary Judgment. On April 23, 2010, the court granted the requested extension. *See* margin order dated April 23, 2010. Thus, Pilgrim's Pride's pending Motion for Summary Judgment was timely filed.

The court held a hearing on the Second Request and the Rule 56 Motion on September 23, 2010, at 1:00 p.m., in Gadsden, Alabama. For the reasons explained below, the court concludes that both the Second Request and the Rule 56 Motion are due to be granted.

## II.   Analysis

### A.   The Second Request

Rule 201 of the Federal Rules of Evidence provides:

**a) Scope of rule.**  This rule governs only judicial notice of adjudicative facts.

**(b) Kinds of facts.**  <u>A judicially noticed fact must be one not subject to reasonable dispute in that it is either</u> (1) generally known within the territorial jurisdiction of the trial court or (2) <u>capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned</u>.

**(c) When discretionary.**  A court may take judicial notice, whether requested or not.

**(d) When mandatory.**  A court shall take judicial notice if requested by a party and supplied with the necessary information.

**(e) Opportunity to be heard.**  <u>A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed</u>.  In the absence of prior notification, the request may be made after judicial notice has been taken.

**(f) Time of taking notice.**  <u>Judicial notice may be taken at any stage of the proceeding</u>.

**(g) Instructing jury.** In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Fed. R. Evid. 201 (emphasis by underlining added).

The court has already entered an order granting the initial Request. The first Request and Second Request are identical with the limited exception that the Second Request includes one additional bankruptcy-related exhibit: the "NOTICE OF (A) ENTRY OF AN ORDER CONFIRMING THE DEBTORS' JOINT AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (AS MODIFIED) AND (B) OCCURRENCE OF THE EFFECTIVE DATE" (Doc. 29-5) (the "Notice"). There does not appear to be any basis for taking judicial notice of the other bankruptcy records (*i.e.*, the bar date notice and confirmation orders) that Pilgrim's Pride has offered while rejecting its application with respect to the Notice.

Also, Mr. Jones has not opposed this Second Request. Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before

it . . . ."); *see also Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a . . . motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant). Therefore, the Second Request is due to be granted, and the court takes judicial notice of all the attached exhibits.

### B.   The Rule 56 Motion

The Rule 56 Motion seeks to have this court find that Mr. Jones's ADA complaint has been discharged as a result of Pilgrim's Pride's emergence from bankruptcy and Mr. Jones's failure to file a proof of claim with the bankruptcy court. In sum, Pilgrim's Pride asserts that the following set of material facts is undisputed: (1) Mr. Jones "received actual notice to his home address of his obligation to file a proof of claim[;]" (2) Mr. Jones's claims have been discharged in bankruptcy; and (3) Pilgrim's Pride "has no primary insurance applicable to [Mr. Jones's] claim." (Doc. 37 at 2). Pilgrim's Pride has established that no material factual dispute exists with respect to its bankruptcy defense and that it is entitled to a dismissal of Mr. Jones's ADA claims as a matter of law.

Preliminarily, both in his brief and again at the summary judgment hearing, Mr. Jones has failed to factually controvert with any evidentiary support Pilgrim's Pride's

set of summary judgment facts as required under Appendix II of the court's uniform initial order entered on January 13, 2010.[2] (Doc. 10). Due to this omission, it is appropriate for this court to "deem [as] admitted for summary judgment purposes" "[a]ll material facts set forth in the statement" supplied by Pilgrim's Pride. (*Id.* at 16).

Moreover, both as briefed and as presented orally, Mr. Jones's opposition to the Rule 56 Motion misses the mark in several other respects. Initially, he responds that his discrimination lawsuit was timely filed as measured from his receipt from the EEOC of his notice of right to sue. (Doc. 34 at 1-3). Pilgrim's Pride Rule 56 Motion expressly does not challenge the timeliness of Mr. Jones's filing of his ADA case. (Doc. 37 at 2-3).

Mr. Jones then asserts that the "Motion should be stricken as a purely tactical way to obtain two (2) bites at the litigation apple; their Rule 12(b) Motion was made for the purely tactical purpose of previewing Plaintiff's arguments in their Response to Defendant's Motion for Summary Judgment; Defendant's filing of their Rule 56, filed after withdrawing their Rule 12(b), is a sham pleading." (Doc. 34 at 3; *see also*

---

[2] At the hearing, Mr. Jones's attorney conceded that he had not filed any evidence in opposition to the Rule 56 Motion. Additionally, Mr. Jones's attorney did not bring any contradictory proof with him to be filed into open court. Mr. Jones was not present at the hearing.

*id.* at 3-7).[3] There is no merit to this misplaced argument; the prior filing of an eventually mooted motion to dismiss under Fed. R. Civ. P. 12(b) does not preclude the subsequent filing of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 under the circumstances presented here. Instead, Pilgrim's Pride's Rule 56 Motion was appropriately and timely filed consistent with the court's ruling on the hearing held on April 19, 2010 ("Further, Defendant shall have until April 30, 2010, to file an answer or to otherwise respond (as, for example, by filing a motion for summary judgment) to Plaintiff's 4 Amended Complaint."), and Pilgrim's Pride's unopposed request for an extension of time until May 14, 2010, in which to file its dispositive motion. (Doc. 27; *see also* margin order entered on April 23, 2010, granting Doc. 27).

Mr. Jones, next, sweepingly and without evidentiary substantiation, states that he "did not have actual knowledge of Pilgrim's Pride['s] Bankruptcy Proceedings." (Doc. 34 at 7). Relatedly, Mr. Jones then asserts that "[t]his argument would have to rebut Defendant's Proof of Service on Plaintiff of the bar date deadline[.]" (*Id.* at 7 (citation omitted)). <u>If</u>, Mr. Jones had supported his contention <u>with some admissible proof</u>, he might be correct in his position; however, in the absence of such evidence,

---

[3] Mr. Jones's counsel devoted a large portion of his argument at the hearing to this point.

he has not met his burden as the non-movant on summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("**Opposing Party's Obligation to Respond.** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, <u>its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial</u>.") (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B) (explaining burden of nonmovant to include "<u>citing to particular parts of materials in the record</u>, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing" deficiencies in movant's summary judgment materials) (emphasis added) ("*[E]ffective December 1, 2010, absent contrary Congressional action.*").

Mr. Jones further off-pointedly contends that "[i]f Plaintiff establishes his claim was not scheduled, the burden shifts to Defendant to produce evidence that Plaintiff had notice of the bankruptcy proceeding and failed to file a claim[.]" (Doc. 34 at 7 (emphasis added) (citations omitted)).[4] However, the record conclusively

---

[4] Mr. Jones mistakenly, and without any evidentiary support, similarly states later in his brief that "[t]he parties do not dispute that Plaintiff was not listed as a creditor or that his claim was not scheduled as potential liability." (Doc. 34 at 10).

establishes that Mr. Jones <u>was</u> acknowledged as a potential creditor as part of Pilgrim's Pride's bankruptcy case. (Doc. 32-6 at Ex.1 at Ex. D ("Creditor Matrix" listing Mr. Jones and his address attached as an exhibit to the "Certificate of Service" executed by "the claims and noticing agent for the Debtor" on April 15, 2009, and filed in the bankruptcy court on May 8, 2009 (Doc. 32-6 ¶ 4), which substantiates that both the "**Notice of Deadline for Filing Proofs of Claim**" and the "**Proof of Claim Form**" were mailed to Mr. Jones)). Regardless, the record undisputedly confirms that Mr. Jones, a known and listed potential creditor, received reasonable notice of the deadline for filing proofs of claim pertaining to Pilgrim's Pride's bankruptcy case, including mailing a notice to his last known place of residence and "publishing notices in various newspapers." (Doc. 37 at 5 (citing Statement of Undisputed Facts ¶ 12); *see also* Doc. 32-6 ¶ 4 (describing mailing process to Mr. Jones); Doc. 32-6 at Ex. 1 (documenting mailing process to Mr. Jones); Docs. 32-2-32-5 (documenting publication of notice in various newspapers, including ones of general circulation such as <u>The Wall Street Journal</u> and <u>USA Today</u>)).

    Mr. Jones raises another ill-fated issue by indicating that he "may be able to establish his claim falls within an exception to the general rule of dischargeability, stated within 11 U.S.C. § 523." (Doc. 34 at 11 (citation omitted)). However, as Pilgrim's Pride has clarified multiple times, controlling authority confirms that the

9

willful and malicious injury exception contained in § 523(a)(6) applies to individual debtors, not corporate ones. *See, e.g., In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir. 1989) ("A corporate debtor is not an individual debtor for the purposes of Section 523.") (citations omitted). To the extent any bankruptcy courts, any district courts, or any other circuit courts have directly or implicitly held otherwise, such decisions are, at best, only persuasive authority, and this court is obligated to adhere to *In re Spring Valley*, absent some countervailing development that renders it no longer binding within the Eleventh Circuit. Therefore, as a matter of law, § 523 cannot save Mr. Jones's ADA lawsuit.

Confusingly and unpersuasively, Mr. Jones spends part of his brief by reverting back to certain arguments that he made in response to Pilgrim's Pride's Rule 12(b) Motion. (*See, e.g.*, Doc. 34 at 11 ("Because the discharge of an unscheduled ADA claim in a Chapter 11 proceeding is a fact-based inquiry, the Court concludes Plaintiff could plead facts sufficient to establish the claim was not discharged because Plaintiff was a known creditor who did not receive actual Notice of Bankruptcy Proceeding and, therefore, the Motion to Dismiss must be denied.") (emphasis added); *id.* ("Even if the Court converts the Motion from 12(b) to 56, Defendant cannot first introduce this "fact" in a Reply Brief. On the merits, Defendant asserts only that Pilgrim's Pride is CURRENTLY self-insured[.]") (emphasis added)).

Finally, Mr. Jones ends his brief by unsuccessfully attempting to reiterate a potential insurer exception to discharging his claim in bankruptcy. More specifically, § 524(e) provides that "[e]xcept as provided in subsection (a)(3) of this section, <u>discharge of a debt of the debtor does not affect the liability of any other entity</u> on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e) (emphasis added). Regarding this provision, the Eleventh Circuit has held that "pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable." *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir. 1989).

Pilgrim's Pride has responded that § 524(e) and the explicit holding in *Jet Florida* are inapplicable due to the established facts that it "has no primary insurance applicable to this claim" and that "it is responsible for all fees and costs up to one million dollars." (Doc. 37 at 8; *see also* Doc. 32-11 ¶¶ 4-5 (describing effect of self-insured retention endorsements); Doc. 32-11 at Ex. 1 (attaching employment practices liability insurance policy information substantiating Pilgrim's Pride's self-insured retention and excess insurance coverage status)). While Mr. Jones tries unsuccessfully to challenge these material facts, <u>he offers no contradictory evidence</u> in doing so and once again procedurally and obscurely raises the propriety of considering these facts under Rule 12(b). (*See, e.g.*, Doc. 34 at 12 ("This is a fact on

which Plaintiff's rights hinge and is not proper for consideration in the context of a 12(b).") (citation omitted); *id.* at 11-12)).

Pilgrim's Pride additionally maintains that the Eleventh Circuit's reasoning for the result in *Jet Florida* strongly suggests, if not unambiguously implies, that § 524(e) does not except Mr. Jones's ADA claim from bankruptcy discharge. (*See, e.g.*, Doc. 31 at 13 (quoting with emphasis *Jet Florida*'s elaboration upon the appropriate scope of the "fresh start policy"); *id.* at 16 ("[T]o permit this case to proceed conflicts with Eleventh Circuit precedent in *In re Jet [Florida] Systems*[.]")). To support its position, Pilgrim's Pride also relies upon several non-binding bankruptcy court decisions some, of which expressly cite to *Jet Florida*. (Doc. 31 at 13-16); *see, e.g., DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (Bankr. S.D.N.Y. 2005) (dismissing plaintiff's claims when only applicable insurance coverage is self-insured retention of two million dollars); *In re Columbia Gas Transmission*, 219 B.R. 716, 720 (Bankr. S.D.W. Va. 1998) (dismissing claims against corporate debtor who carried $250,000.00 in self-insured retention ("SIR") because SIR requires corporate debtor to pay costs of defense for an otherwise discharged claim, which would violate Bankruptcy Code's fresh start policy) (quoting as supportive authority, *Jet Florida*'s discussion of "'the fresh-start policy embodied in the Code'").

*Jet Florida* is silent about the specific situation of a partially self-insured

corporate debtor under § 524(e); instead, it only explicitly addresses those instances in which an insurer, and not the debtor, is potentially liable for the third-party claim, and any actual financial exposure to the debtor is extremely remote. However, *Jet Florida*'s analysis at least persuasively suggests, and perhaps necessarily by implication means, that § 524(e) should not be triggered in this instance. *Compare Jet Florida*, 883 F.2d at 972 ("A bankruptcy discharge and the concomitant injunction against subsequent actions are designed to give the debtor a financial 'fresh start.'") (citation omitted); *with id.* at 975 ("The 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured."); *and with id.* at 976 ("In short, we find that the possibility [as opposed to an actuality] that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated.") (emphasis added).

Moreover, the court independently has not been able to find any other controlling authority which either directly addresses or indirectly touches upon the issue. Furthermore, Mr. Jones offers no countervailing case law in which a court has held that § 524(e) saves from discharge a claim against a debtor who is self-insured for a million dollars or for some other significant retention amount such that no primary insurance applies, and instead only excess coverage by a third-party insurer

applies. *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Under such circumstances and in the absence of any binding precedent holding otherwise, the potential insurer exception to discharging a claim in bankruptcy is inapplicable in the context of this debtor/self-insured retention case as persuasively guided (if not commanded) by the rationale set forth in the *Jet Florida* opinion, the *DePippo* and *Columbia Gas* bankruptcy court decisions, as well as the plain language of § 524(e) (carving out exception to discharge bar when "discharge of a debt of the debtor does not affect the liability of any other entity") (emphasis added). In particular, the record is devoid of any evidence that litigating Mr. Jones's claims will involve the potential liability of or affect the assets of another entity because the million dollar self-insured retention threshold has not yet been met. Instead, the record is unrefuted that Pilgrim's Pride would "have to [approximately] expend an additional $980,000.00 before it has exhausted its self-insured retention triggering insurance coverage and payment of defense costs." (Doc. 37 at 9; *see also* Doc. 32-11 ¶ 6 ("To date legal fees incurred on this matter are approximately $20,000.00 and

Pilgrim's Pride must expend an additional $980,000.00 (either in legal costs and/or any judgment) before any insurance coverage is triggered.")).  As a result, requiring Pilgrim's Pride to proceed with litigating the merits of Mr. Jones's ADA complaint would impermissibly infringe upon its right to a "financial 'fresh start.'"  *Jet Florida*, 883 F.2d at 972 (citation omitted).

### III.  Conclusion

Consistent with the above analysis, both Pilgrim's Pride's Second Request and its Rule 56 Motion are due to be granted.  The court will enter a separate order dismissing this case with prejudice.

**DONE** and **ORDERED** this the 28th day of September, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge